It is objected, by the counsel for the appellant, that this bond, so far as it is the obligation of the appellant, was taken to the sheriff, a public officer, in a case not provided for by law; and that it is for that reason *Page 448 
void, under the provisions of the Revised Statutes. (2 R.S.,
286, § 59.) It is said that, after the time allowed for excepting to the sureties in a replevin bond, the sheriff's duty in respect to it is at an end, and if any further obligation is taken in his name it is to be considered as taken illegally by color of his office, and is void by force of that section of the statute. But I am of opinion that the appellant, by consenting to execute, as obligee, a bond bearing a date anterior to the service of the process in replevin, and containing recitals showing, if true, that it was an original bond in the proceeding and was taken at a time when it was lawful and proper to take such a bond, is estopped from setting up that it was a subsequent transaction and done at a time when there could not be a legal occasion to take such a bond. It has been several times decided by the Supreme Court that a replevin bond might be amended after the service of the process, and consequently after the time for taking an original bond had gone by. In these cases the amended bonds must have been made to assume the form of bonds taken at the initiation of the proceedings; and the sureties, by signing the amended bond or assenting to the amendment, were concluded, upon the principle I have mentioned, from disputing that the obligation was taken upon the occasion upon which, by its terms, it purports to have been taken. (Cutler v. Rathbone, 1Hill, 204; Hawley v. Bates, 19 Wend., 632; Newland v.Willetts, 1 Barb. S.C.R., 20.) The new or amended bond in these cases is considered as given nunc pro tunc. It is not the order of the court which gives a retrospective effect to such bonds, but the assent of the obligee. The court relieves the party from his laches in not having procured a good bond at the proper time; but it is the general principles of law which hold the obligees to the liability which, by signing the amended bond, they intended to assume. The same principle was held in reference to an appeal bond (Tompkins v. Curtis, 3 Cow., 251), and in regard to a bond given to procure an adjournment in a justice's court. (Irwin v. Caryell, 8 John., 407.) *Page 449 
In both these cases, the bonds were statutory bonds, and the new or amended obligations were allowed to be taken on the trial. They must have been made to take the form of the original obligation which was discharged upon the taking of the new one.
The appellant's execution of the bond in question was not, perhaps, in exact accordance with the order of the court. That was to renew the sureties, or that the existing sureties should justify. If the appellant's execution superseded the existing sureties, it might be well enough, considered as a renewal of the sureties. It was intended, I think, to add the present defendant to the two sureties already on the bond (Norton v. Coons, 3Denio, 130); and it is to be inferred from the case that this was accepted by the defendant in replevin in lieu of a precise compliance with the condition upon which the court allowed the trial to be postponed.
There is no difficulty respecting the consideration. If the appellant is concluded from disputing that he was a surety upon an original bond, the same consideration which supports every replevin bond would apply to him. But he signed and sealed the bond to enable the plaintiff in replevin to procure a postponement, and the case was postponed accordingly. The detriment to the defendant, for whose benefit the bond was taken, was a sufficient consideration.
The question whether the judgment in favor of Evans and Bennett, the original sureties, was correct, is not before us on this appeal. If the appellant, in executing the bond under the circumstances existing when he put his name to it, became a co-surety with them, he is entitled to contribution, notwithstanding the judgment in their favor. The litigation upon which that judgment was given was between the present plaintiff and Evans and Bennett. The question as to contribution between the three apparent sureties was not tried or adjudged. I am aware that the Code contains a provision enabling the court "to determine the ultimate rights of the parties on each side, as between themselves" *Page 450 
(§ 274); but the court is not necessarily required to make such determination, and I conceive that, in order to do so in a common law action, allegations in the nature of pleadings should first be allowed to be put in between the parties who become adverse litigants. It is sufficient, in the present case, that the court has not undertaken to decide any question between the appellant and the two defendants who succeeded in obtaining judgment against the plaintiff. It is true that it would be inconsistent with that judgment for the appellant to maintain an action against Evans and Bennett for contribution; and, if that judgment were res judicata in respect to the appellant, it could not be done. But it has not any such effect against him. He could not appeal from that judgment, for he was not a party to it. If the appellant should apply to be subrogated to the obligee in the bond, a question of some difficulty would arise as to whether, in that aspect of the case, he would be bound by the judgment. But we need not embarrass ourselves with that question now. If the three persons are to be considered as co-sureties upon the facts of the case independent of that judgment, the judgment itself would not bar the appellant from his action for contribution. I think, therefore, that the appellant's position, that he is discharged because his right to contribution has been interfered with, is not well taken.
The paper which the defendants gave in evidence, which purported to be filed March 20th, 1849, was not a record of judgment. It consisted of the circuit minutes, the pleadings, and what purports to be a rule for judgment. It was not signed by the clerk, a formality which, by the judiciary act, was essential to constitute a judgment record. (Laws of 1847, ch. 280, § 53.) There was nothing, I think, to impair the effect of the formal judgment record which was signed and filed in 1851.
It is objected that the assignment of the bond by the sheriff to the plaintiff was executed in 1849, before the judgment was perfected. Judgment was, in fact, obtained *Page 451 
before the assignment of the bond, if the paper filed in 1849 is to be taken to have the effect of a rule for judgment; and the statute does not require that it should be perfected by filing the record before the defendant may require the assignment of the bond. But however this may be, I am of opinion that an assignment, made before the sheriff could be compelled to execute one, would not be void. The statute declares that the bond shall be assigned to the defendant or his personal representatives, if judgment be rendered for him in such action. (2 R.S., 527, § 32.) If the assignment be made prematurely, the defendant cannot avail himself of it until he obtain judgment; but when that happens, if he has already an assignment of the bond, he may proceed upon it.
The judgment should be affirmed.
All the judges (except COMSTOCK, J., who was absent) concurred in holding the defendant bound on the ground of estoppel.
Judgment affirmed.