# CHARLESTON

## STATE *ex rel. v.* PURCELL.

Submitted January 16, 1888.—Decided February 18, 1888.

1. BOND—INJUNCTION-BOND—ACTION ON.
    The order of the judge awarding an injunction under the last clause of the first section of section 10 of chapter 133 of the Code, required E. P., suing out the injunction, to give bond in the penalty of $1,000.00, "conditioned for the payment of all such costs and damages as may be awarded to G. should the injunction be dissolved." E. P., with sufficient sureties, voluntarily executed the required bond, "conditioned for the payment of any decree or order that may be awarded against him, and all such costs and damages as shall be incurred or sustained by G. in the event the injunction be dissolved." The injunction was dissolved and said E. P. was, by the decree dissolving the same, decreed to pay to G. the sum of $1,145.25, with interest from the —— day of November, 1883, until paid, and $147.66 costs. In an action on this injunction bond against E. P. and his sureties at the relation of G. to recover the amount of said decree and damages, he recovered judgment for the penalty of the bond ($1,000.00) to be discharged by the payment of $147.66, the costs mentioned in said decree. Upon a writ of error allowed on the petition of G. HELD :
        I. That as the penalty of the bond, with interest thereon from the date of the dissolution of the injunction, was less than the amount, which at the date of such dissolution the obligors in the injunction bond then became liable for, the plaintiff was entitled to recover for the benefit of G. the whole penalty of the bond, with interest from that date to the date of said judg-

ment, with interest on that aggregate from the date of the judgment. (p. 53.)

II. The plea to said action setting forth *in extenso* the order of the judge awarding the injunction, as well as said bond and the condition thereof, and averring that by reason of the variance between the condition of the bond and the condition prescribed by the order of the judge awarding the injunction, the said bond is null and void, presented no defence to the action. (pp. 63, 64.)

2. BOND—INJUNCTION-BOND—ACTION ON.

In an action on an injunction bond brought by the relator to recover damages upon the dissolution of the injunction, where none have been awarded to him by the decree dissolving the same, the declaration must specify the particular injuries complained of occasioning such damages, with such clearness and distinctness of statement, that they may be understood by the party who is to answer the same. (p. 64.)

3. PLEA IN BAR.

A plea in bar alleging matters which, if true, present no defence to the action, if objected to, should be rejected. (p. 64.)

4. PLEA IN BAR.

When a plea is tendered in bar of an action and offered to be filed, and the plaintiff objects to the filing thereof and moves the court to reject the same, the court, upon consideration of such motion, will, for the purposes thereof, regard the matters of fact alleged in the plea as admitted to be true; and if the matters thereof present no defence to the action, the plea should be rejected. (p. 64.)

Statement of the case by WOODS, JUDGE :

This is an action of debt in the Circuit Court of Mercer county, in the name of the State of West Virginia, at the relation and for the benefit of J. T. Griffith against Edmund Purcell, Thomas Purcell and Thomas Reed, upon an injunction bond in the penalty of $1,000.00, which, after reciting that said Edmund Purcell, in a certain chancery suit instituted by him against said J. T. Griffith, had obtained from the judge of the Circuit Court of said county a preliminary injunction restraining said Griffith from collecting, and certain of his debtors from paying to him certain moneys, was subject to the following condition : "If the above bound Edmund Purcell shall pay and satisfy any decree or order that may be awarded against him, and all such costs and dam-

ages as shall be incurred or sustained by the said Griffith in the event the injunction be dissolved, then the above obligation to be void, else to remain in full force and virtue." This injunction was wholly dissolved on the 1st day of December, 1883. The order of the judge awarding the injunction concluded as follows: "But this order is not to take effect until the plaintiff, or some one for him, shall before the clerk of the Circuit Court of Mercer county enter into a bond, with sufficient security, to be approved by said clerk, in the penalty of $1,000.00, conditioned for the payment of all such costs and damages as may be awarded to the defendant, Griffith, should this injunction be dissolved."

The declaration contains two counts, both of which correctly describe and set forth the bond and the condition thereof with all proper recitals. The breach of the condition of the bond allged in the first count, after rejecting all useless and redundant verbiage, is in these words: "And the said plaintiff saith that the injunction aforesaid hath been dissolved by the said Circuit Court, and a decree rendered in favor of the plaintiff against said Thomas Purcell, for the sum of $1,145 26, with interest from the — day of November, 1883, till paid, and $147.66 costs; and the said Edmund Purcell hath incurred and become liable by reason of the dissolution of said injunction to pay to the said plaintiff damages to the amount of $1,000.00, nevertheless the said Edmund Purcell, although often requested, the amount of the decree aforesaid, and the costs and damages aforesaid, hath not paid to the said plaintiff, but hath hitherto wholly neglected and refused and still doth neglect and refuse to pay and satisfy the sum aforesaid, whereby an action hath accrued," etc.; and then concludes with the usual negative averments of non-payment of the penalty to the plaintiff, to the damage, etc. The second count makes no mention of the decree for $1,145.26, and seeks only to recover said $147.66 costs and damages. In this count the breach of the condition of the bond is the non-payment of the said costs and damages, and it is alleged in all respects substantially in the same words as that in the first count, and concludes in the same manner.

No demurrer was entered to this declaration, nor was its sufficiency in any manner before or after the trial called in

question. The defendants tendered and offered to file three special pleas, Nos. 1, 2, and 3, to the filing of which the plaintiff objected, which objections as to pleas 1 and 2 were sustained, and they were rejected, but overruled as to plea No. 3, which was filed. To this last plea the plaintiff tendered and offered to file three special replications, all of which, being objected to by the defendants, were rejected. The defendants then pleaded "conditions performed" and "conditions not broken," to which as well as to plea No. 3 the plaintiff replied generally, and issues were thereon joined. The objections made to the rulings of the court in rejecting pleas Nos. 1 and 2, and in filing plea No. 3, and rejecting the special replications thereto, were saved to the parties respectively by proper bills of exceptions. The plaintiff afterwards moved the court to strike out said plea No. 3, which motion the court overruled; and neither party requiring a jury, all the matters of law and fact were submitted to the court, which rendered the following judgment:

"The court, having inspected the record and heard the proofs adduced, finds for the plaintiff the sum of $147.66, the amount of costs set forth in the taxation of costs made by the clerk of this court in the chancery cause of *Edmund Purcell, Sr.*, v. *J. T. Griffith et al.* due to said Griffith; it is therefore considered by the court that the plaintiff recover of the said defendants the said sum of one thousand dollars, the debt in the plaintiff's declaration mentioned, to be discharged by the payment of the said sum of $147.66, the costs as aforesaid, and his costs about his suit in that behalf expended, including an attorney's fee of $5.00."

To this judgment a writ of error has been allowed upon the petition of the relator, J. T. Griffith, who assigns as error the rulings of the court (1) in permitting plea No. 3 to be filed; (2) in rejecting his three special replications thereto; (3) in refusing to reject plea No. 3 after the same had been filed; (4) in rendering judgment for only $147.66, the actual costs awarded on the dissolution of the injunction; (5) in not rendering judgment in his favor for the sum of $1,145.26 decreed to him upon the dissolution of the injunction; (6) in refusing to permit the plaintiff to answer certain questions propounded to him by his attorneys, tending to prove the damages which

he had sustained in his business as railroad contractor, and otherwise by reason of the suing out of said injunction; (7) in excluding the bill and answer in the case of *Atlantic Giant Powder Co.* v. *Griffith & Purcell*; (8) and in not rendering judgment in favor of the relator for $1,145.26.

*Williams & Davidson* for plaintiff in error.

*R. C. McClaugherty* for defendants in error.

WOODS, JUDGE:

It will be observed that the injunction awarded in this cause was not an injunction to stay proceedings on a judgment or decree for the payment of money, and was not therefore one where the bond was required by section 10 of chapter 133 of the Code to be with "condition to pay such judgment or decree and all such costs as may be awarded against the party obtaining the injunction and also such damages as shall be incurred or sustained by the person enjoined in case the injunction be dissolved." The injunction being to prevent J. T. Griffith from collecting from the Norfolk and Western or East River Railroad Company certain estimates then due and soon to become due to the firm of Griffith & Purcell, as well as any other moneys due or to become due to said firm, and to prevent said railroad company from paying such estimates to Griffith, and to prevent Griffith from interfering with or removing the books of the said firm, until the further order of the court, it became the duty of the judge awarding the injunction to prescribe the penalty and condition of such bond, and in his order he did so, by requiring the bond to be in the penalty of $1,000.00, "with condition for the payment of all such costs and damages as may be awarded to the defendant, Griffith, should this injunction be dissolved."

It is apparent that upon the dissolution of this injunction the court could award the defendant no damages whatever, for by the twelfth section of said chapter 133 such damages can only be awarded upon the dissolution of an injunction to stay proceedings upon a judgment or decree for the payment of money. The damages, which the judge awarding the injunction intended to secure by the condition of the bond as

prescribed by him in his order, were such special damages as might result to the defendant, Griffith, by being prevented from collecting said estimates and moneys due to the firm of Griffith & Purcell, and from interfering with or removing the books of said firm. If, therefore, no such damages resulted to Griffith from the suing out of said injunction, then none could be recovered upon such bond, for in that respect there could be no breach of the condition of the bond.

If any such special damages have been the necessary or immediate result of the suing out of the injunction, they must be known to the party so injured. He will be able to state the character of each particular injury resulting therefrom, the manner in which and the extent to which he has been damaged, and the pecuniary loss necessarily or immediately occasioned thereby. When he seeks to recover from the alleged wrong-doer compensation for the loss resulting therefrom, the plainest principles of justice as well as the established rules of pleading require that in any judicial proceeding instituted for that purpose the injuries complained of and the damages resulting therefrom should be set forth with such reasonable particularity and certainty that his adversary may be informed of the precise character of the demand, and be able, if any he has, to make his defence against it.

From what has already been said, it is apparent that the condition of the injunction bond described in the declaration is more comprehensive than the condition of the bond required to be given by order of the judge awarding the injunction. The latter was "for the payment of all such costs and damages as might be awarded to Griffith should the injunction be dissolved," while that inserted in the bond is that Purcell will "pay any decree or order that may be awarded against him," and also "all such costs and damages as shall be incurred or sustained by Griffith in case the injunction be dissolved." It is contended by the defendants in error that as the condition of the bond is more comprehensive than that prescribed by the order of the judge, it is void *in toto*, and if not totally void, it is void as to so much of the condition as is in excess of the order of the judge, and upon these two legal propositions the defendants' special pleas Nos. 1, 2 and 3 are based.

Before considering these propositions or the sufficiency of these pleas and the plaintiff's special replications to plea No. 3, we will consider the precise character and extent of the claim presented in the declaration. As already shown, the breaches of the condition of the bond assigned in both counts in regard to the damages claimed are in terms so general as to include any or every possible injury from the suing out of the injunction which could constitute a cause of action, while at the same time they wholly fail to inform the defendants of any particular injury complained of or of any damages resulting therefrom. In the case under consideration there could be no damages awarded by the court on the dissolution of the injunction. Special damages resulting therefrom, if any were sustained, could only be recovered in an action instituted on the injunction bond for that purpose ; and in such action the injuries resulting in such damages must be alleged with such clearness and distinctness of statement that they may be understood by the party who is to answer them, by the jury who is to ascertain the truth of the allegations, and by the court who is to give the judgment. *Rex* v. *Horne*, 2 Cowp., top p. 672; *Andrews* v. *Whitehead*, 13 East 102; *Ward* v. *Harris*, 2 Bos. & P. 265 ; Com. Dig. "Pleader," ch. 17; 1 Chit. Pl. 236, 348.

Neither of the counts alleges any special damages sustained by the relator resulting from the suing out of the injunction ; and none having been alleged, the Circuit Court did not err in excluding from the jury the evidence offered by him tending to show that he had sustained special damages in his business as a railroad contractor by the suing out of the injunction. While the declaration has not been prepared by the pleader with as much accuracy and precision of statement as is desirable, and has thereby confounded in some cases the "plaintiff" with the "relator," and has used them interchangeably, as synonymous, and has in one instance in the first count used the name of Thomas Purcell for that of Edmund Purcell, yet these errors could mislead no one, as the person intended in each case sufficiently appears from other parts of the declaration.

From the statement of the pleadings hereinbefore given, it is apparent that every allegation necessary to entitle the re-

lator to a recovery on the bond, if the same be valid, of the amount of the decree for $1,145.26, with interest from — day of November, 1883, and $147.66 costs, substantially appears on the face of the declaration, and that, if the same had been demurred to, the demurrer should have been overruled ; for enough appears on the face of the declaration to enable the court to "render judgment thereon according to law and the very right of the case." Section 29, ch. 125, Code.

From the view we have taken of the main question in this controversy, it becomes immaterial to inquire whether special damages were sustained by the relator or not, as the judgment which the court should have rendered would have been the same in either event. Not having demurred to the declaration, whatever errors were committed by the plaintiff appearing on the face thereof are after a trial of the action by the court by consent of parties, as well as after a verdict, cured by the statute of jeofails, unless there be omitted something so essential to the action . * * * that judgment according to the law and the very right of the case can not be given. Section 3, ch. 134, and § 29, ch. 125, Code ; *Holliday's Ex'rs* v. *Myers*, 11 W. Va. 282 ; *Spengler* v. *Davy*, 15 Gratt. 381. From what we have already said it is clear that, if the injunction bond in this case is either a valid statutory bond or a valid common-law bond, the averments in the declaration are sufficient to authorize a recovery of the whole penalty of the bond, the same being less than the amounts decreed to be paid to the relator upon the dissolution of the injunction. We will now consider whether this injunction bond is in whole or in part a valid statutory bond, and whether the same is a good common-law bond.

It is conceded that if the same be invalid in either aspect, it is only because the condition of the bond is more comprehensive than that prescribed by the order of the judge awarding the injunction. The statute which requires the court or judge awarding an injunction in any case other than staying proceedings upon a judgment or decree for money to fix the condition as well as the penalty of the bond without which the injunction can not take effect, contains no provision which expressly or by implication, declares that injunction bonds voluntarily executed, containing any other conditions than

those prescribed in one case by the statute, and in the other by the court or judge awarding the injunction, shall for that cause, be void either in whole or in part.

While the statute requires all injunction bonds to be given before the clerk of the proper court and proved and acknowledged before him, (section 1, ch. 10, and § 10, ch. 133, Code,) he is not required to prepare the same. It is the duty of the party obtaining the injunction, if he would make the same effectual, to have the bond so given, acknowledged, or proved before the clerk, who, being satisfied with the sufficiency of the sureties therein, files and preserves the bond so given, or proved. The injunction bond in this case was voluntarily acknowledged, executed upon a sufficient consideration, for a lawful purpose, with full knowledge on the part of the obligors that the condition thereof was more comprehensive than that prescribed by the judge awarding the injunction. This indifference on their part most probably grew out of the confidence of the principal obligor, Edmund Purcell, that he would recover in his suit a decree for a large amount against Griffith, instead of the possible decree against himself which he so generously undertook to secure by the condition of said bond, by virtue of which he obtained the full benefit of his injunction for 15 months.

A "bond" is defined to be an obligation under seal, and is either single or conditional. It is single, when the obligor obliges himself, his heirs, administrator, or executors to pay a certain sum of money on a certain day. It is conditional, when the obligor obliges himself, his heirs, etc., to pay a certain sum of money, upon condition that if he does some particular act the obligation shall be void. A common-law bond, whether single or conditional, is one voluntarily executed in the absence of any statutory authority requiring the same to be executed, prescribing the penalty or condition thereof. Murfree Off. Bonds, §§ 214, 430. Such bonds, unless executed for a consideration *malum in se* or *malum prohibitum*, or the same be in violation of public policy, or be in special cases declared void, are valid, and bind the obligors to the extent and according to the terms and conditions of the bond. A statutory bond is one required by statutory authority by State, county, district, or municipal officers, by fiduciaries ap-

pointed, created, or recognized by law, or by parties in judicial proceedings, or by officers and agents of private corporations, taken in pursuance of authority conferred on them by their charters, or by general law.

The chief distinction between statutory and common-law bonds is that the obligee in the former is entitled to all the special privileges, remedies, and processes which are granted by the statute, while the common-law or voluntary bond stands upon the ground of any other contract introduced in a bond upon a condition between man and man. And if for any reason a bond which was intended to be a statutory bond fails in a material respect to conform to the requirements of the statute, it will not be good as a statutory bond, but it may be valid as a common-law bond, or, if very defective, it may be altogether void. The general rule is that if bonds intended to be statutory, but too defective to fulfill all the essential requirements of the statute to be entitled to the privileges of strictly statutory bonds, they are nevertheless good as common-law bonds, unless they contain provisions contrary to those prescribed by the statute, or are in violation of law, common or statutory, or public policy. Murfree Off. Bonds, § 430; *Howard* v. *Brown*, 11 Me. 385; *Adler* v. *Green*, 18 W. Va. 201.

Where a superior officer exacts from his inferior a bond more onerous in its conditions than the law authorizes, the bond is void so far as it purports to exact illegal or extra-official duties, or impose unlawful liabilities. *Bomar* v. *Wilson*, 1 Bailey, 461; *Treasurers* v. *Bates*, 2 Bailey 362; *Jameson* v. *Kelly*, 1 Bibb 479; *State* v. *Findley*, 10 Ohio 51. But if a person voluntarily gives to an officer a bond, the obligation of which is greater than the officer is authorized to require, he and his sureties are bound thereby to the full extent of the condition. *Slutter* v. *Kirkendall*, 100 Pa. St. 307; *Burrall* v. *Acker*, 23 Wend. 606; Murfree Off. Bonds, § 433. In *Slutter* v. *Kirkendall*, *supra*, Slutter received from the sheriff his property which had been levied upon and gave to the sheriff a bond for the re-delivery of the goods or the payment of the execution; whereas an obligation to deliver the property, when legally demanded, or to pay the value thereof, was all the law required. The Supreme Court of Pennsylvania held the obligors bound by the bond. The court says: "The ob-

ligors appear to have voluntarily assumed a stronger obligation, [than the law requires,] and they are bound thereby."

*Jameson* v. *Kelly*, *supra*, was an action of debt on an injunction bond which was conditioned that "if the said Samuel shall satisfy and pay said judgment and costs and the judgment and costs 'which might thereafter be obtained in the aforesaid suits, and all cost and charges and damages that should accrue on the trial of said injunction in case it should be dissolved, then said bond to be void, else to remain in full force and virtue." The statute in such cases required "bond with security to be given for the judgment and costs at law and the costs in the suit in chancery only." The question was whether so far as the condition of said bond provided for the payment of the damages accruing on the dissolution of the injunction, it was not illegal and void; and the Court of Appeals of Kentucky held that it was not. Boyle, Judge, delivering the opinion of the court in that case, says : "It is admitted that the chancellor awarding the injunction made the condition of the bond more onerous than the statute required, but that inasmuch as the law gave the defendant 10 per cent. on the amount of the judgment at law the court could not say that it was unreasonable to require security to be given for its payment." It will be observed that in this case the court clearly held, not only that the bond was a valid injunction bond, but also that even the "onerous condition" thereof did not render it invalid, even to the extent that the condition was more onerous than the condition prescribed by the statute.

*State* v. *Findley*, *supra*, was an action on a bond given by a county treasurer, "with condition that he shall faithfully and impartially discharge all the duties of his' office; while the statute prescribed that such bond should be conditioned for the paying over according to law all moneys which shall be received for State, county, township, or other purposes." The court nevertheless held said bond to be a good statutory as well as a good bond at common-law ; citing *U. S.* v. *Bradley*, 10 Pet. 343. The case of *U. S.* v. *Bradley*, above cited, was an action of debt on a pay-master's bond, conditioned that "if said pay-master shall well and truly execute, and faithfully discharge, according to law and

according to instructions received by him from proper authority, his duties as pay-master aforesaid; and he, his heirs, executors, or administrators shall regularly account when thereto required, for all moneys received by him from time to time as pay-master aforesaid, with such person or persons as shall be duly authorized and qualified on the part of the United States for that purpose, and moreover pay into the treasury such balance as on a final settlement of the said pay-master's accounts shall be found justly due from him to the said United States, then the obligation to be void," etc. The condition of such bond prescribed by act of Congress was " fully to account for all moneys and public property which such pay-master may receive, in such sums as the Secretary of War shall direct." As a ground of defence the defendants pleaded that they were not bound by said obligation, because it was variant from the bond required by said act of Congress, which was the only act authorizing or prescribing the character or condition of such bond, but the Supreme Court of the United States held that it is a doctrine well founded in the common-law, recognized from a very early period, that bonds and other deeds may in many cases be good in part and void for the residue, where such residue is founded in illegality, but not *malum in se*, and that there is no valid distinction between bonds and other deeds containing covenants, conditions, or grants not *malum in se*, but illegal at the common-law, and those containing conditions, covenants, and grants illegal by the express prohibition of statutes. In each case the bonds or other deeds are void, as to such conditions, covenants, or grants which are illegal, and are good as to all others which are legal and unexceptionable in their purport. The only exception is when the statute has not confined its prohibition to the illegal conditions, covenants, or grants, but has expressly or by necessary implication avoided the whole instrument to all intents and purposes; and the bond was held to be a good statutory bond.

*Johnson* v. *Vaughan*, 9 B. Mon. 217, was an action of debt upon an injunction bond, with condition, after reciting that J. had obtained an injunction to stay all further proceedings in a suit brought against him by V. on a note for $110.25, that if said J. and B. J., or either of them, shall well and truly pay the

said sum of $110.25 to said V., with all legal costs and interest or damages that has been or may be decreed in the aforesaid judgment or injunction in case the same shall be dissolved, or they may be made in anywise liable for the debt and costs and interest or damages, and abide by and perform the decree of said court, then," etc. The condition of such injunction bond, as prescribed by the statute, was " for paying all money and tobacco and costs due or to become due to the plaintiff in the action at law, and all such costs as shall be awarded against him in case the injunction shall be dissolved. In this case, also, the defendants insisted that the bond was invalid, because the condition thereof was more onerous than that prescribed by the statute, but the court held that the condition of the bond, so far as it secured the debt, interest, and costs, legal and equitable, in case the injunction should be dissolved, was strictly within the letter of the statute, and that the other particulars mentioned in the condition, if more than required by the law, are not against law, and therefore can not possibly have the effect of vitiating that part of the condition which is required by law, and which are in substantial conformity with the requisitions of the act, and without which there would be no propriety in restraining a party from proceeding in the appropriate tribunal to have his demand ascertained and enforced.

In *Belt* v. *Marr*, 1 Call 47, it was held that if the forthcoming bond includes an excess, if the plaintiff, after judgment and at the same time, release the excess, the defect is thereby cured, and the judgment rendered thereon is valid. *Scott* v. *Hornsby*, Id. 41.

In *Worsham* v. *Egleston*, Id. 48, it was held that if before the act of 1794 the sheriff in taking a forthcoming bond included his commission on the debt, it was erroneous, but in such case the bond is not void, and judgment shall be entered for the sum due, without the commissions. And the same course was pursued in *Wilkinson* v. *McLaughlin*, Id. 49. In *Beale* v. *Downman*, Id. 219, it was held that if a forthcoming bond be taken payable to the sheriff he may maintain an action upon it. And in *Johnston* v. *Meriwether*, 3 Call 524, it was held that " if a forthcoming bond be not good as a statutory bond it may be good as a common-law bond." In this

case the condition was oppressive in this, that the condition required the execution debtor to deliver not only the slaves levied on, but " also as many more under as good title, as the slaves levied on." In an action of debt on this bond the plaintiffs had judgment, and a motion for a writ of error thereto was unanimously rejected by the court of appeals.

In *Clawson* v. *Shaw*, 5 Watts 468, a constable who had levied an execution on the goods and chattels of the judgment debtor being authorized by statute to take from him a bond in the following or like words, viz. : " We, A, B. and C. D., or either of us, are held and firmly bound, with E. F., constable, in the sum of ——, upon condition that the said A. B. shall deliver unto E. F. aforesaid the following goods and chattels, —— on the —— day of —— at the house of ——, which are taken in execution at the suit of G. H. against A. B., or pay the amount of the execution with costs." Instead of such bond, the constable took the following : " We promise to pay the amount of the within execution to Samuel Shaw on Saturday, the 26th inst., or deliver property to satisfy the debt, interest, and costs at the house of Mrs. M. Lisenbigler without stay of execution, as witness our hands and seals," etc. This was held by the Supreme Court of Pennsylvania to be a good common-law bond, but bad as a statutory bond.

*Barnes* v. *Brookman*, 107 Ill. 317, was an action of debt on an injunction bond in the penalty of $1,200.00 which, after reciting that M. had obtained an injunction to restrain John R. Brookman and T. M. Bradley from enforcing the collection of a certain judgment entered in favor of Brookman and from entering up against M. M. a judgment for $500.00, and from transferring, selling, or entering up judgment on three promissory notes of $500.00 each made by M. and M. M. to said Brookman, was conditioned for the payment of said Brookman and Bradley of the sum of $1,200.00, and all such costs and damages as might be awarded against said M. in case said injunction should be dissolved. The trial of the action resulted in a judgment in favor of Brookman and Bradley against the obligors in the injunction bond for $1,200.00 debt, and $1,200.00 damages, and costs. Upon appeal, the Supreme Court of Illinois held that the bond, having been voluntarily entered into for a sufficient

58      State *v.* Purcell.

consideration, not contravening the policy of the law nor repugnant to any statutory provisions, was valid at common-law, notwithstanding the attempt may have been to execute it pursuant to a statute with the terms of which it does not strictly comply. And in *Pritchett* v. *People*, 1 Gilman 525, the same court held, in an action upon an administrator's bond taken by a person acting as probate judge, but who at the time it was taken had no authority to take the same, that the bond so taken was valid, and announced as a general rule that any obligation entered into voluntarily and for a good consideration is valid at common-law, unless it contravenes the policy of the law, or is repugnant to some provisions of the statute. *Fournier* v. *Faggott*, 3 Scam. 347; *Balingall* v. *Carpenter*, 4 Scam. 306; *U. S.* v. *Linn*, 15 Pet. 290; *U. S.* v. *Tingey*, 5 Pet. 115; *Morse* v. *Hodson*, 5 Mass. 314; *Freeman* v. *Davis*, 7 Mass. 200; *Burroughs* v. *Lowder*, 8 Mass. 373; *Burrall* v. *Ackers*, 23 Wend. 606.

In *Kavanagh* v. *Saunders*, 8 Me. 422, it was held that if an officer, having a debtor lawfully in custody on *mesne* process, required for his enlargement a bond containing more than is required by law, the debtor was considered under duress so far as respects such bond; but if the debtor, in order to obtain his enlargement, voluntarily, and without any compulsion, offers to the creditor other or greater security than the statute requires, and it is accepted, it becomes a valid contract between the parties. The case of *Adler* v. *Green*, 18 W. Va. 201, was an action of debt upon what purported to be a forthcoming bond taken by the sergeant of the city of Wheeling from Green and his sureties upon an execution levied on the goods and chattels of Green. The bond having fixed the day for the delivery of the property on a different day from that appointed for the sale thereof, this Court held that the same was not for that reason a good statutory bond, but that it was a good common-law bond if there was no other objection to it.

The same question had been considered by this Court in the case of *Porter's Ex'rs* v. *Daniels*, reported in 11 W. Va. 250. In that case two actions of debt had been brought on two joint and several bonds dated June 1, 1861, payable to the plaintiff for $232.72 and $1,597.18, respectively. They were taken by

the sheriff of Jefferson county upon two writs of *fieri facias* in favor of the plaintiff against the principal obligor, B. F. Daniels, pursuant to the ordinance of the Virginia convention at Richmond, adopted on the 30th of April, 1861, entitled "An ordinance to provide against the sacrifice of property, and to suspend proceedings in certain cases." Both of these bonds were subject to this condition : "If, therefore, the said B. F. Daniels, W. B. Daniels and D. M. Daniels shall well and truly pay the said debt, interest, and costs [specified in said executions] when the operation of an ordinance to provide against the sacrifice of property and to suspend proceedings in certain cases [adopted by the convention of Virginia, April 30, 1881] ceases, then this obligation to be void; else to remain in full force and virtue." In each of these actions there was judgment for the plaintiff, and upon a writ of error this Court held these to be valid as common-law bonds. The judgment of this Court, in passing upon the question, assumed as an admitted fact that the ordinance of the Virginia convention, which authorized the sheriff to take these bonds, was an absolute nullity, and that there was no statutory authority authorizing the sheriff to take them.

Green, President, delivering the opinion of the Court, reviewed a large number of authorities on this question, and we deem it unnecessary here to re-examine them or to reconsider the conclusion reached in that case. The naked question was there presented, whether a bond taken by an officer without any authority of law from obligors who voluntarily execute the same for a consideration received thereon, not unlawful in itself, was for that cause alone, void, and was decided unanimously in the negative. This conclusion was stated by Green, President, as follows : "The mere fact that a bond not authorized by law has been taken by an officer does not render such bond invalid at common law. Such bonds have been frequently held void at common law, but wherever so held, it has not been simply because taken by an officer without authority, but for other and sufficient reasons appearing in the particular case, such as that they were not voluntarily executed ; that they were given to an officer to induce him to violate his duty as such officer, or to induce him to perform a duty he was bound to perform

without such bond; or that the taking of the bond was oppressive, and it was given without consideration; or that the obligee in the bond had no interest in the subject-matter; or that the taking of the bond was in violation of public policy, or was executed under circumstances or contained provisions which would have rendered a private bond void at law."

From these authorities it is obvious that an obligation, whether intended to be a statutory bond or not, voluntarily executed for a sufficient consideration, which is neither *malum in se* nor *malum prohibitum*, and which does not contravene the policy of the law and is not repugnant to the provisions of the statute, is valid at the common law; and that an obligation thus executed for a sufficient consideration, containing conditions, some of which are legal and others illegal, and the latter can be severed from the former, will at common law be held invalid, as to the conditions which are illegal, but valid as to those which are legal, unless such obligation because of such illegal conditions be by statute declared wholly void. Thus, the illegal conditions of the obligation are disregarded or treated as surplusage, while the obligation itself to the extent the conditions are legal is at common law held to be valid. A similar principle has been applied to statutory bonds where the conditions thereof either fall short or are in excess of the conditions prescribed by the stature or by the court or officer authorized to do so. In such case if the condition fall short of the requirements of the statute, the bond will be held valid as a statutory bond to the extent of the condition, unless it be so defective that it fails in every material respect to conform to the statute. On the other hand, when the condition is more onerous than required by the statute, if the bond has been voluntarily executed for a sufficient consideration which is neither *malum in se* nor *malum prohibitum* nor in violation of the policy of the law nor repugnant to the provisions of the statute, it will be held valid as a statutory bond to the extent that the conditions thereof are authorized or required by the statute; and the onerous condition in excess of the requirements will be disregarded or treated as surplusage, unless the manner of taking or the form of the bond prescribed by the statute is made an express condition

of its validity." *Bonar* v. *Wilson*, 1 Bailey 461 ; *Treasurer* v. *Bates*, 2 Bailey 362 ; *Jameson* v. *Kelley*, 1 Bibb 479 ; *State* v. *Findley*, 10 Ohio 51, *supra; Grimes* v. *Butler*, 1 Bibb 192 ; *Purple* v. *Purple*, 5 Pick. 226 ; *Johnston* v. *Meriwether*, 3 Call 524 ; *U. S.* v. *Howell*, 4 Wash. C. C. 620 ; *Morse* v. *Hodson*, 5 Mass. 314 ; *Bolton* v. *Robinson*, 13 Serg. & R. 193 ; and 4 Myers, Fed. Dec., §§ 234–237,—where the foregoing and many others are considered and reviewed and summed up in the following legal propositions : (1) "Though the condition of a statutory bond contains more than is required, it will not therefore invalidate the bond, if the good can be eliminated from the bad." (2) "A bond, to be valid under a statute, must be taken in the manner and the form prescribed, if such latter is made an express condition of its validity."

Treating of the same subject, Murfree Off. Bonds, § 61, says: "It sometimes occurs that a bond prescribed by a statute, and required by it to be taken by a specified officer, is so drawn that it contains conditions in excess of those prescribed by the statute. ·In such case, the question arises whether the bond is valid at all, and if so, to what extent. The law in such cases seems to be settled that if such a bond be voluntarily executed by its obligors, it is valid so far as it imposes obligations authorized by the statute, but the stipulations which are in excess of it may be rejected as surplusage ;" citing *Bonar* v. *Wilson*, *Treasurer* v. *Bates*, *Jameson* v. *Kelley* and *State* v. *Findley*, *supra*. The same author, in treating of that particular kind of statutory bonds familiarly known as "injunction bond," says : "If a bond of this description is defective because it does not contain all that the statute requires, it will nevertheless be enforced as to the material conditions prescribed by the statute which it does contain ;" citing *Holliday* v. *Myers*, 11 W. Va. 276. "And, on the other hand, if, besides embodying all the statutory requirements for a perfect and complete injunction bond, it includes other conditions and obligations which are not authorized by the statute, but which are nevertheless not against the law or in violation of public policy, the bond will not be vitiated thereby, but will be held valid ; the extraneous matter being regarded as surplusage ;" citing *Johnson* v. *Vaughan*, *supra*.

*Holliday's Ex'rs* v. *Myers, supra,* was an action of debt upon an injunction bond in the penalty of $400.00, conditioned for "the payment to said executors of a judgment in a suit, and all loss, damages, or injury they may sustain if an injunction awarded by E. B. Hall, Judge, on the 28th January, 1869, in the case of said executors against Joseph Myers, be dissolved." The declaration averred the dissolution of the injunction; that the judgment was for $200.00, with interest on $100.00 from 24th December, 1861, and on $100.00 from 24th December, 1862, and $24.41 costs, and the costs in the injunction suit decreed to plaintiffs amounted to $32.45,—all of which, together with 10 per cent. damages on the amount of the judgment, was claimed by said executors. The defendants pleaded to the action, and on their plea issue was joined. At the succeeding term, the plea was withdrawn; and the plaintiffs having proved their case, they recovered judgment against the obligors in said bond for $301.72, with interest from 4th January, 1872, the date of the judgment, and costs. This judgment, $301,72, was doubtless intended to be the amount of the judgment mentioned in the injunction bond on the day of its date, although it is in fact $1.82 less.

Upon a writ of error to this Court, the defendants below contended that the injunction bond was fatally defective, and that no action would lie thereon. The defendants in error, the plaintiffs below, contended that it was too late to raise such question after judgment, if the bond contained enough upon which to found an action; and that the bond was valid, notwithstanding that, in providing for the payment for "all loss or injury" not required by the statute, it omitted the liability for costs which the statute did require. Haymond, Judge, delivering the opinion of this Court, on page 294 says "that the declaration does not allege that the bond contains any provision for paying all such costs as may be awarded against the party obtaining the injunction, as provided in section 10 of chapter 133 of the Code. Although the condition of the bond is not so extensive as the statute requires, yet it contains a material part of the conditions required, the bond is not void, but binds the obligors to the extent of such condition; and when the bond contains some conditions or provisions not required by the statute, and

some of those which are required, it is valid and binding to the extent of the latter." And the judgment of the Circuit Court was accordingly unanimously affirmed, thereby holding in this case that said injunction bond, notwihtstanding the defects apparent upon the face thereof, was a valid statutory bond, so far as it contained a material part of the conditions required by the statute, as was held in the case of *Johnson* v. *Vaughan, supra; U. S.* v. *Bradley,* 10 Pet. 343; *Gibson* v. *Beckham,* 16 Gratt. 321; *Pratt* v. *Wright,* 13 Gratt. 175. For these reasons, we are of opinion that the injunction bond in the declaration in this case mentioned is a valid common-law bond, and that the obligors therein are bound thereby, notwithstanding the fact that the condition thereof is more onerous than the condition thereof prescribed by the order of the judge awarding the injunction, the same having been voluntarily executed for a sufficient consideration neither *malum in se* nor *malum prohibitum,* nor in violation of the policy of the law, nor repugnant to the provisions of the statute.

The substance of the defendant's special pleas Nos. 1 and 2, offered to be filed, as well as their plea No. 3, which was filed, presented the same question. Having in each plea set out *in extenso* the bond and the condition thereof, as well as the order of the judge awarding the injunction and prescribing the penalty and condition of the bond, and thereupon, because the condition of the bond was more comprehensive than that prescribed by the order of the judge, plea No. 1 averred that the bond was null and void; plea No. 2 averred that so much of the condition as provided that Edmund Purcell should pay the decree or order that might be awarded against him and all such costs and damages as should be incurred or sustained by said Griffith in the event the injunction should be dissolved was null and void; and plea No. 3, which was filed after the second count (which was an amendment to the declaration) was filed, averred that so much of the condition as required Edmund Purcell to pay any other sums than the costs and damages awarded against him by the order dissolving said injunction was null and void. The only issue of fact presented by any of these pleas was whether the condition of the bond described in the declaration was

different from that prescribed by the order of the judge. The motion of the plaintiff to reject these several pleas must for that purpose be regarded as an admission that the facts alleged therein are true, and if when so admitted to be true they offer no sufficient defence to the action, they should be rejected. Such motion to reject must as to that particular plea be regarded as equivalent to a demurrer thereto, admitting the truth of all the facts therein stated, and averring that they show no sufficient defence to the action. When the attention of the court is called to the sufficiency of the plea by motion to reject the same, or by objections to the filing thereof, and the court is of opinion that it presents no sufficient defence to the action, it is generally the duty of the court to reject the same. From what we have seen, the alleged difference between the condition of the bond and that prescribed by the judge did not render said injunction bond invalid either in whole or in part. It follows that neither of these pleas presented any defence to the action, and therefore the plaintiff's motion to reject said plea No. 3 as well as pleas Nos. 1 and 2 should have been sustained, and it is therefore immaterial whether the plaintiff's special replications thereto were rejected or not.

Upon the trial of the action, as appears from the plaintiff's second bill of exceptions, no evidence was offered by the defendants; but the documentary evidence introduced by the plaintiff proved that said Edmund Purcell, by the decree dissolving said injunction, was indebted to and became liable to pay to the relator, J. T. Griffith, the said sum of $1,145.26, with interest thereon from December 1, 1883, until paid, and $147.66 costs in the declaration mentioned; and that the defendants, by reason of the breach of said conditional bond, are liable to pay to the said plaintiff the sum of $1,000.00, the penalty of said bond, with interest thereon from the 1st day of December, 1883, the date when the injunction was dissolved. We are therefore of opinion that the Circuit Court erred in rendering judgment in favor of the plaintiff. for the sum of $1,000.00, the penalty of said bond, to be discharged by the payment of the sum of $147.66 and costs, including an attorney's fee of $5; and for this error the said judgment of the Circuit Court rendered herein on the 20th

day of June, 1884, must be reversed, with costs. And this Court now proceeding to render such judgment as the Circuit Court should have rendered, it is considered that the plaintiff, at the relation of and for the benefit of J. T. Griffith, recover of the defendants the sum of $1,033.16, (aggregate amount of $1,000.00, the penalty of said bond, with interest upon said aggregate from the 1st day of December, 1883, until the 20th day of June, 1884,) with interest until paid, together with his costs about the prosecution of his suit in the Circuit Court expended.

JOHNSON, PRESIDENT, concurred.

GREEN, JUDGE, concurring:

It seems to me in this case the words "all damages as may be awarded" in the order of the court granting the injunction must be interpreted as "all damages as may be sustained," if we would give any meaning whatever to this part of the injunction order. It must be so interpreted, as in such a chancery suit as this injunction order was entered in, the court could not under the law award any damages. In this case the damages sustained would include the loss of the plaintiff's debt of $1,145.26, decreed in his favor against Edward Purcell in this injunction cause. This being the case, I do not see that it is necessary in this case to decide the question whether the addition to the condition required by the injunction order which appears in the injunction bond that "Edward Purcell shall pay and satisfy any decree or order that may be awarded against him" is to be regarded as surplusage only, or as binding on the obligors on this bond. For in either case the responsibilities of the obligors would be the same in this case, that is, it would be the penalty of the bond. I think, therefore, that as this is a very important legal question, and it is unnecessary to decide it in this case, it should be left undecided till some case comes before us that requires its decision. I concur in all other respects in Judge Woods's opinion.

SNYDER, JUDGE, dissenting:

If the word "awarded" in the order granting the injunction is understood and intended to mean the same as if the

word "sustained" had been used instead, then it is possible
the conclusion reached in the preceding opinion is correct;
because the damages sustained would in this case include
the loss of the debt decreed to the plaintiff in the injunction
suit, and would therefore make the obligors in the bond lia-
ble for such debt. This is all the condition of the bond re-
quires in addition to the costs which are included in both
the order and the bond. But the opinion of the court pro-
ceeds upon a wholly different ground, and one in which I do
not concur. It sanctions the broad proposition that an in-
junction bond voluntarily executed, with conditions more
onerous than the penalty required by the order granting the
injunction, is binding upon the obligors not only to the extent
required by such order, but also to the extent of its provisions
in excess of those so required, unless such provision contra-
vene the policy of the law or the prohibition of the statute.

In Murfree Off. Bonds, § 394, the law is stated as fol-
lows : "Injunction bonds, in common with most other ob-
ligations, must be so construed *ut res majis valeat quam
pereat*. If a bond of this description is defective because it
does not contain all the statute requires, it will nevertheless
be enforced as to the material conditions prescribed by the
statute which it does contain. And, on the other hand, if
besides embodying all the statutory requirements for a per-
fect and complete injunction bond it includes other condi-
tions and obligations which are not authorized by the stat-
ute, but which nevertheless are not against the law or in
violation of public policy, the bond will not be vitiated
thereby, but will be held valid, the extraneous matter being
regarded as surplusage." For the first of these propositions
the author cites *Holliday* v. *Myers*, 11 W. Va. 276, and for
the second, *Johnson* v. *Vaughan*, 9 B. Mon. 217. Haymond,
Judge, in announcing the opinion of the court in the former
case, at page 294 says : "When the bond contains some con-
ditions or provisions not required by the statute, and some
of those which are required, it is valid and binding to the
extent of the latter ;" citing *Gillespie* v. *Thompson*, 5 Gratt.
132; *White* v. *Clay*, 7 Leigh, 68; *Fox* v. *Mountjoy*, 6 Munf.
36; *Pratt* v. *Wright*, 13 Gratt. 175; *Gibson* v. *Beckham*,
16 Gratt. 321 ; *Porter* v. *Daniels*, 11 W. Va. 250.

In *White* v. *Clay*, *supra*, the court awarded the injunction upon the terms that a bond with security be given according to law; that is, making the security responsible for whatever might eventually be found due. The bond given required the obligors to pay the amount of the judgment enjoined, and all such costs as shall be awarded by the chancery court. The injunction was dissolved as to only a part of the judgment debt, and the court held the obligors were not bound to pay the whole judgment, but only that part as to which the injunction was dissolved. 7 Leigh 80. In *Frazier* v. *Frazier*, 2 Leigh 642, it was decided that "bond with surety taken from an administrator with the will annexed, with conditions not in the form prescribed by law for an official bond of administrator with will annexed, but in the form prescribed for an administrator and not exactly conforming even to that, *held*, this is not a good statutory bond, and no suit, either at law or in equity, can be maintained against the surety for the benefit or at the relation of a legatee." This decision was afterwards affirmed in *Morrow* v. *Peyton*, 8 Leigh 54.

In *Pratt* v. *Wright*, *supra*, a suit against a guardian and his sureties, the doctrine of these last two cases was so far qualified as to hold the bond valid and binding to the extent of the provisions contained in it which were authorized by the law. The court decided: "A guardian's bond contains a covenant to indemnify the justices constituting the court at the time it is taken. Although this is not required by the statute, and therefore not obligatory, it does not avoid the bond." In referring to the opinion of Story, Judge, in *U. S.* v. *Bradley*, 10 Pet. 343, the court says: "The judge proceeded further to declare that inasmuch as the act merely prescribed the form and purport of the bond to be taken, and did not declare that all other bonds not taken in the prescribed form should be utterly void, it would be a mischievous interpretation of the act to hold that under such circumstances it was the intendment of the act that the bond should be void. And that it was a sufficient compliance with the policy of the act, and in consonance with the dictates of the common-law and of common sense, to hold the bond void, as to any condition imposed beyond what the law re-

quired, and good, so far as it was in conformity to the act."
13 Gratt. 180. The doctrine here announced is affirmed in
*Gibson* v. *Beckham*, 16 Gratt. 321, and Brandt Sur., § 443.
In *Johnson* v. *Vaughan*, *supra*, it was held that "the inser-
tion of a condition in an injunction-bond, not required by
the statute, but not against law, will not vitiate those that are
required by law." In this case the conditions of the bond in
excess of those required by law were not considered binding.
9 B. Mon. 217. In section 194, Murfree Off. Bonds, the author,
after stating that if an official bond more onerous in its con-
ditions than the law authorizes is exacted by a superior from
an inferior officer, the bond is void as to such extra condi-
tions, says: "But if a person voluntarily gives to an officer
a bond, the obligation of which is greater than the officer is
authorized to require, he and his sureties are bound thereby
to the full extent of the condition." The only authorities
cited in support of this text are *Slutter* v. *Kirkendall*, 100
Pa. St. 307; *People* v. *Reeder*, 25 N. Y. 302; and *Burrell* v.
*Acker*, 23 Wend. 606. The first of these cases, *Slutter* v.
*Kirkendall*, does not justify the text. It was a feigned issue
to try the question of the liability of the defendants on a
forthcoming bond. The condition of the bond was that the
obligors should deliver the property or pay the execution,
when the law only required it to be for the delivery of the
property or pay the value of the property.

The court, in its opinion, says: The obligors appear to
have voluntarily assumed a stronger obligation and they are
bound thereby. It is very probable that the value of the
property levied on was admitted to be fully equal to the
amount of the execution, and therefore the alternative agree-
ment to pay the amount of the execution with costs was con-
sidered of no practical importance. Be that as it may, no
cause is shown why the obligors shall not be held to a ful-
filment of the obligation which they assumed;" citing the
other two cases cited by Murfree. It does not appear that
the court would have held the obligors bound to pay the ex-
ecution, if it had been shown that the value of the property
was much less than the debt. The implication from what is
said by the court is entirely consistent with the idea that it
would not have done so. But however this may be, the cases

of *People* v. *Reeder* and *Burrell* v. *Acker*, on which this decision seems to be based, do not sustain the doctrine claimed for it. *People* v. *Reeder* was an action on the official bond of a sheriff, and no question arose therein or was decided in respect to the condition of the bond. This case has no application to the question before us. The only question pertinent to the case before us, decided in *Burrell* v. *Acker*, is that the New York statute, declaring void all bonds taken by an officer *colore officii*, does not avoid securities which are valid at common-law when taken by an officer *virtute officii*. This case never justifies the text in Murfree nor what is claimed to be the decision in *Slutter* v. *Kirkendall*, and I have been unable to find any actual decision which does sustain the doctrine that a recovery may be had upon any condition in an injunction bond which is in excess of the requirement of the statute or the order awarding the injunction.

*Jameson* v. *Kelly*, 1 Bibb 479, decided by a divided court in 1809, comes nearer to the question in support of Murfree than any other case I have found. In that case the majority of the court held that a bond given in the terms of the order of the judge was valid although they exceeded the literal terms of the statute. They held that the statute was not prohibitory of the authority of the chancellor to impose, in addition to those required by law, such other terms or conditions as may be just and reasonable ; and that, inasmuch as the conditions of this bond did not include anything more than the law would award upon a proper bond, it was held binding. If this case can be supposed to go beyond this, it has been overruled or qualified in *Johnson* v. *Vaughan, supra*, decided by the same court in 1848.

But, without reference to the decisions in other States, it seems to me the decisions of the courts of Virginia and this State, hereinbefore referred to, have fully settled the law in this State that an injunction bond containing conditions in excess of those required by the statute or the order of the judge is good as to the conditions so required, but not binding on the obligors as to those in excess. These bonds are executed under the requirements of the law in order to obtain the benefit of legal process. They are not voluntary in the sense that they are willingly executed,

but they are executed solely for the purpose of obtaining the benefit of legal process, and are the only conditions upon which such benefit can be obtained. They are more compulsory than voluntary. The law requires the court or judge to fix the conditions, and, after he has fixed them, it does not seem to me to be either just or in accordance with sound policy, if by ignorance or inadvertence a party gives a bond with other conditions than those required that he should be held bound by such additional conditions. Upon these reasons, briefly stated, and upon the authorities before referred to, I base my dissent from the opinion announced in this case.

REVERSED.

# CHARLESTON.

